IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**DAVID M. OSIRES,**  3:15-CV-02067-BR

      **Plaintiff,**  OPINION AND ORDER

v.

**OREGON TEAMSTER EMPLOYERS TRUST and THE WILLIAM C. EARHART COMPANY,**

      **Defendants.**


**CLIFFORD S. DAVIDSON**
Sussman Shank, LLP
1000 S.W. Broadway
Suite 1400
Portland, OR 97205
(503) 227-1111

      Attorneys for Plaintiff

**NOELLE E. DWARZSKI**
**DAVID S. BARLOW**
McKenzie Rothwell Barlow & Coughran, P.S.
1325 Fourth Avenue
Suite 910
Seattle, WA 98101
(206) 224-9900

      Attorneys for Defendant Oregon Teamster Employers Trust

1 - OPINION AND ORDER

**SARAH N. TURNER**
Gordon & Rees, LLP
701 Fifth Avenue, Suite 2100
Seattle, WA 98104
(206) 695-5100

      Attorneys for Defendant William C. Earhart Company

**BROWN, Judge.**

      This matter comes before the Court on the Motion (#37) for Summary Judgment filed by Defendant Oregon Teamster Employers Trust and Defendant William C. Earhart Company (WCE).[1] For the reasons that follow, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DISMISSES** this matter **without prejudice** to permit Oregon Teamster Employers Trust's Board of Trustees to review Plaintiff's request for retiree health benefits.

## BACKGROUND

      The following facts are taken from the parties' summary-judgment materials and are undisputed unless otherwise noted.

      Plaintiff David Osires worked for United Parcel Service (UPS)[2] for 33 years. During his employment Plaintiff was a member of the International Brotherhood of Teamsters and participated in the Oregon Teamster Employers Trust Health and

---

[1] On June 2, 2016, WCE filed a Joinder (#42) to Oregon Teamster Employers Trust's Motion for Summary Judgment with brief additional arguments.

[2] UPS is not a party to this action.

2 - OPINION AND ORDER

Welfare Plan (the Plan).

Defendant Oregon Teamsters Employers Trust (the Trust) is a multiemployer, collectively-bargained welfare trust created and administered pursuant to § 302(c)(5) of the Labor Management Relations Act (LMRA), 29 U.S.C. § 186(c)(5).  It is also an employee welfare benefit plan as defined by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1002(1).  The Trust is self-funded and provides both self-funded and insured welfare benefits to its participants and their dependents.  The Board of Trustees is the named fiduciary of the Trust and interprets the terms of the Plan and hears participants' claims concerning eligibility determinations and other adverse actions. Defendant WCE "administers the Plan on behalf of the Trust." Compl. at ¶ 3.

Plaintiff retired from UPS and effective June 30, 2013, Plaintiff was no longer covered under the Plan.  The Trust, however, also provides retiree welfare benefits to eligible participants pursuant to the Trust's Retiree Plan.  Accordingly, on June 26, 2013, the "Trust Office" mailed to Plaintiff a Notice regarding the termination of his health coverage in which it advised Plaintiff:

> This notice contains important information about your right to continue health coverage under the OREGON TEAMSTER EMPLOYERS TRUST.
>
> Effective June 01, 2013, you are no longer covered under the Trust because of your reduction in hours

3 - OPINION AND ORDER

>       or termination of employment.  You have the right
>       to elect to continue your Trust health coverages
>       for up to 18 months by making self-payments.
>
>       To elect COBRA coverage you must complete and sign
>       the enclosed form and return it to [WEC] at the
>       address listed on the form.  Your election notice
>       must be returned or postmarked within 60 days of
>       receipt of this notice or  you will permanently
>       lose the right to continue coverage.

Decl. of Pam Howard, Ex. A at 1.  Also on June 26, 2013, the Trust Office mailed Plaintiff an information package regarding participation in the Trust's health-coverage program for retirees in which it advised Plaintiff:

> **IMPORTANT NOTICE IF YOU ARE A TEAMSTER-REPRESENTED EMPLOYEE WHOSE TRUST COVERAGE IS ENDING BECAUSE OF RETIREMENT**
>
>       If you are:
>
>       •      A Teamster-represented Employee;
>
>       •      Who is losing OTET health coverage
>              because you are retiring;
>
>       You should review this Notice.
>
>       The Oregon Teamster Employers Trust has
>       separate retiree programs for Teamster-represented
>       employees covering Medicare and non-Medicare
>       retirees.  If you wish to participate in either of
>       these retiree programs, <u>you must apply within six
>       (6) months of the later of when your Oregon
>       Teamster Employers Trust coverage ends or your
>       pension effective date</u>.  Failure to apply within
>       this six-month period will irrevocably end your
>       ability to participate in the Oregon Teamster
>       Employers Trust Retiree Program.
>
>       This timely enrollment requirement applies
>       even if you intend to postpone your retiree
>       coverage because you have other group medical
>       coverage available or you wish to delay your

4 - OPINION AND ORDER

> retiree coverage until you are Medicare eligible.
> If you want to postpone your coverage, you still
> need to apply within the six month period
> identified above and inform the Trust that you are
> electing to postpone your coverage.
>
> The rules governing who is eligible lo
> participate in the Oregon Teamster Employers Trust
> Retiree Plan and retiree application forms are
> available from the Trust Office.

Howard Decl., Ex. A at 3 (emphasis in original). Plaintiff asserts he did not receive from the Trust Office the June 26, 2013, mailing that contained the Notice and the information package.

In July 2013 UPS made a "contribution for compensated hours paid out following Plaintiff's termination of employment," which "provided [Plaintiff with] June 2013 coverage." The Trust alleges it sent Plaintiff a second package containing the COBRA notice and retiree-health coverage information after UPS made the July 2013 contribution. The Trust Office did not retain a copy of the second package, and Plaintiff alleges he did not receive the package.

It is undisputed that Plaintiff did not apply for the Trust's retiree health-coverage program within six months of the date that his Oregon Teamster Employers Trust coverage ended (June 30, 2013) or within six months of his pension's effective date (October 2013).

On March 16, 2015, Plaintiff contacted the Trust Office to inquire about enrolling in the Trust's retiree health-coverage

5 - OPINION AND ORDER

plan. At that time Plaintiff advised the Trust Office that he had been covered under his wife's group Kaiser Health and Welfare Plan until January 2015.

On March 17, 2015, the Trust Office mailed Plaintiff a letter addressing his request to enroll in the Trust's retiree health-coverage plan in which it advised:

> [T]he Oregon Teamster Employers Trust Health and Welfare Non Medicare Retiree Plan has specific criteria which must be met in order to qualify for participation in this Plan. For complete details, please refer to pages 10-15 of the enclosed summary plan description.
>
> *David, your active coverage through the Oregon Teamster Employers Trust FW - Kaiser Plan ended on June 30, 2013. Your first pension check was issued in October 2013.*
>
> **Initial Eligibility Requirements**: A Retiree Shall be eligible to participate in the Retiree Plan when he or she has satisfied all of the following requirements:
>
> * * *
>
> *David you met these requirements to participate as a Retiree not eligible for Medicare.*
>
> * * *
>
> **Timely Application**. Application for Retiree Plan benefits must be made to the Trust Administrative Office within six months following the later of the date coverage under a Plan for active Employees offered by the Trust ceases or the Retiree's pension effective date. Applications made after this six month period will be denied and no coverage will be provided to the Retiree and Dependents.
>
> David, the Trust Administrative Office has no record of an application from you for enrollment

> in the Retiree Plan.
>
> **At the time the Retiree first qualifies for this Retiree Plan coverage the Retiree and/or his or her spouse may make a one-time irrevocable election to delay medical coverage until he or she becomes Medicare-eligible.**
>
> * * *
>
> *David, the Trust Administrative Office has no record of receiving a request from you for the onetime irrevocable election to delay medical coverage until you become Medicare-eligible.*
>
> * * *
>
> Based upon review of the Information submitted we are not able to approve your request for enrollment in the Oregon Teamster Employers Trust Non-Medicare Retiree Plan.  If you feel this denial is in error, you have the right to request an appeal in accordance with the provisions of the Plan to the Board of Trustee's [*sic*].

Howard Decl., Ex. B (emphasis in original).

On March 31, 2015, Plaintiff submitted a letter to the Board of Trustees appealing the denial of his request for enrollment in the retiree health-coverage plan and stated:

> I . . . am petitioning for the retirement medical health plan. . . .  At the time of my retirement I went to the Pension office at the Lloyd Building and discussed the requirement and signed paperwork concerning work outside UPS.  I was under the impression that this was all that was required of me.
>
> I was under another health plan until the end January [*sic*], until it was unexpectedly cancelled.  I tried to contact the Union rep but was told he was unavailable. . . .  I was directed to the Emhart Co. . . where I was informed of the time limitation and of a packet of paperwork that

7 - OPINION AND ORDER

> I did not receive or had [sic] knowledge of. I
> was told that my recourse was to petition for the
> re-instatement of the benefits since I was over
> the 30 day limit by 10 days. I have since
> received the packet. I am asking to please be
> re-instated to my health benefits plan.

Howard Decl., Ex. C.

On April 9, 2015, the Board of Trustees sent Plaintiff a letter informing him that the Trust's Claim Appeal Committee would hear his claim appeal on May 5, 2013. The Board advised Plaintiff that if he wanted to make a personal appearance, "please complete and return the enclosed form by April 23, 2015. If not, the Trustees' decision will be based on the Trust's administrative file, your appeal letter and any additional material you wish to submit." Decl. of David Barlow, Ex. A at 1.

On April 23, 2015, Plaintiff returned the form that was enclosed with the Board's April 9, 2015, letter and checked the boxes that stated "I am enclosing additional items with this letter" and "I will not be making a personal appearance but wish to receive my full appeal file." Barlow Decl., Ex. B at 1. Plaintiff also noted he would be "at the union hall that day for union meeting please call me if needed." *Id*.

On April 29, 2015, the Board sent Plaintiff a letter in which they noted they had received Plaintiff's appeal election form "in which [he] decline[d] to appear at the appeal hearing." Barlow Decl., Ex. C at 1. Also on April 29, 2015, the Board sent Plaintiff a letter in which it advised him that the Claim Appeal

8 - OPINION AND ORDER

Committee would hear his appeal on May 6, 2015. The Board also enclosed a copy of the administrative file that the Claim Appeal Committee would review. Barlow Decl., Ex. D at 1. The administrative file sent to Plaintiff included an index to the package in which the "nature of [Plaintiff's] claim" was described as follows:

> Claimant is requesting to participate in the Retiree Health Plan. Claimant's active coverage terminated as of June 20, 2013. He . . . did not apply for retiree coverage. Claimant indicates he was covered under an individual plan through Kaiser until January 31, 2015. He contacted the Trust on March 24, 2014 about retiree coverage. Participation was denied because claimant's application was not submitted to the Trust Office within six months of the later of the end of Claimant's active Trust coverage or his pension effective date. Claimant has stated that he was unaware of the Plan's timely application deadline and asserts that he did not receive COBRA materials that were mailed by the Trust on June 26, 2013.

Barlow Decl., Ex. E at 1.

On May 8, 2015, the Claim Appeal Committee issued a decision in which it denied Plaintiff's appeal. In its Memorandum of Findings and Conclusions the Claim Appeal Committee found:

> Upon termination of coverage, claimant was sent a standard COBRA continuation coverage package from the Trust Office. It included the Notice attached as Exhibit A to these Findings and Conclusions. This Notice reminds those participating that they must apply for Retiree Coverage within 6 months of the later of the date their active coverage ceases or their pension effective date.
>
> Claimant indicates he did apply to the Western Conference of Teamsters Pension Plan and that he

9 - OPINION AND ORDER

>> believed that that would also include his retiree health coverage. Trustees in attendance noted that this is an unrelated Trust with a separate administrative office and that in their experience retiree health is not discussed when you apply for a pension with the Western Conference of Teamsters pension Plan.

Barlow Decl., Ex. F at ¶¶ 6-7. The Claim Appeal Committee did not note in its findings that Plaintiff asserted he did not receive the COBRA Notice or the information package. The Claim Appeal Committee concluded:

> The Plan requires that individuals wishing to participate in the Retiree Plan apply within 6 months of the later of the date their active coverage ceases (June 30, 2013) or their pension effective date (October 1, 2013).
>
> Claimant did not contact the Trust until March 24, 2015, which is more than 6 months after the later of the above two dates.
>
> The Western Conference of Teamsters Pension Trust is a separate plan with separate administration and contacting it for does not meet the Trust's Retiree Plan's timely application requirements.
>
> Therefore claimant's request to participate in the Retiree Plan is denied.

Barlow Decl., Ex. F at ¶¶ 11-14. The Claim Appeal Committee advised Plaintiff that he had the "right to . . . bring a civil action under 29 U.S.C. § 1132(a) of ERISA" to challenge the Committee's decision.

On November 2, 2015, Plaintiff filed a *pro se* Complaint in this Court against the Trust in which he sought "the right to [his] medical benefits . . . which [he is] entitled to as a

10 - OPINION AND ORDER

retiree through the Western Conference of Teamsters Pension Trust."

On February 25, 2016, the Court appointed counsel for Plaintiff.

On April 5, 2016, Plaintiff filed a First Amended Complaint against the Trust and WCE in which he asserts Defendants violated § 1132(a)(1)(B) of ERISA when they denied Plaintiff enrollment in the retiree health-coverage plan. Plaintiff seeks damages and equitable relief in the form of an injunction requiring Defendants to offer Plaintiff "another six-month window during which he may enroll in the subsidized Retiree Plan." Compl. at ¶ 32.

On June 2, 2016, the Trust filed a Motion for Summary Judgment for Failure to Exhaust the Trust's Claim Appeal Procedures. On June 2, 2016, WCE filed a Joinder to Defendant Oregon Teamster Employers Trust's Motion for Summary Judgment.

The Court took Defendants' Motion under advisement on July 28, 2016.

## **STANDARDS**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Washington Mut. Ins. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). *See also* Fed. R.

11 - OPINION AND ORDER

Civ. P. 56(a).  The moving party must show the absence of a dispute as to a material fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine dispute as to a material fact for trial.  *Id.*  "This burden is not a light one . . . .  The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).

A dispute as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in favor of the nonmoving party.  *Sluimer v. Verity, Inc.*, 606 F.3d 584, 587 (9th Cir. 2010).  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues."  *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citation omitted).  A "mere disagreement or bald assertion" that a genuine dispute as to a material fact exists "will not preclude the grant of summary judgment."  *Deering v. Lassen Cmty. Coll. Dist.*, No. 2:07-CV-1521-JAM-DAD, 2011 WL 202797, at *2 (E.D. Cal., Jan. 20, 2011)

(citing *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989)).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary."  *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1137 (9th Cir. 2009)(citation omitted).

The substantive law governing a claim or a defense determines whether a fact is material.  *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment.  *Id.*

## DISCUSSION

Defendants move for summary judgment as to Plaintiff's claim on the ground that Plaintiff failed to exhaust the Trust's mandated appeal procedures.

ERISA requires every plan to establish claim procedures. 29 U.S.C. § 1133.  ERISA requires the procedures to include provisions governing the appeal of adverse benefit determinations.  29 C.F.R. § 2560.503-1(b).  In addition, the Ninth Circuit has consistently held benefit-plan participants are required to exhaust plan administrative procedures before filing an action in court.  *See, e.g., Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 626 (9th Cir. 2008) ("[W]e have consistently held that before bringing suit . . . an ERISA

13 - OPINION AND ORDER

plaintiff claiming a denial of benefits must avail himself . . . of a plan's own internal review procedures before bringing suit in federal court." (citation and quotation marks omitted)); *Probert v. Kalamarides*, 528 F. App'x 741, 742 (9th Cir. 2013) ("The district court properly dismissed [the plaintiff's ERISA] claim . . . that defendants improperly withheld his pension benefits, because . . . [the plaintiff] failed to exhaust his administrative remedies."); *Amato v. Bernard*, 618 F.2d 559, 568 (9th Cir. 1980)("[F]ederal courts have the authority to enforce the exhaustion requirement in suits under ERISA, and . . . as a matter of sound policy they should usually do so.").

Defendants do not dispute Plaintiff exhausted his appeal procedures with respect to the matters that Plaintiff alleged in his March 31, 2015, letter to the Board of Trustees in which he appealed the first denial of his request to enroll in the retirement health-coverage plan. Defendants, however, note Plaintiff alleged new matters in his First Amended Complaint that were not raised before or considered by the Claim Appeal Committee; for example, Plaintiff's allegations that:

1. He tried to enroll in the retiree health-coverage plan through means other than those he alleged in his March 2015 letter;

2. The Trust did not adequately investigate whether Plaintiff was provided with notice of the enrollment

>>procedure or whether it would suffer prejudice if Plaintiff was enrolled; and

3. He was only 14 days late in applying for coverage.

Defendants assert the correct forum for Plaintiff to raise new issues and to present new evidence is before the Board of Trustees rather than this Court. Defendants, therefore, contend the Court should dismiss this matter to allow the Board of Trustees to reconsider Plaintiff's request for coverage in light of the additional information that Plaintiff provides in his First Amended Complaint.

Plaintiff does not dispute exhaustion of the plan appeal process is generally required under ERISA or that he raises new issues and presents new evidence in this matter that was not considered by the Claim Appeal Committee in its 2015 review of the denial of Plaintiff's claim. Plaintiff, however, contends reconsideration of this matter by the Board of Trustees would be futile, and, therefore, the Court should exercise its discretion to waive the exhaustion requirement and to deny Defendants' Motions for Summary Judgment.

"A district court has discretion to waive the exhaustion requirement, *Southeast Alaska Conservation Council v. Watson*, 697 F.2d 1305, 1309 (9th Cir. 1983), and should do so when exhaustion would be futile." *Horan v. Kaiser Steel Ret. Plan*, 947 F.2d 1412, 1416 (9th Cir. 1991). *See also K.M. v. Regence Blueshield*,

15 - OPINION AND ORDER

No. C13-1214 RAJ, 2014 WL 801204, at *14 (W.D. Wa. Feb. 27, 2014)(same); *Burnett v. Raytheon Co. Short Term Disab. Basic Ben. Plan*, 784 F. Supp. 2d 1170, 1184 (C.D. Cal. 2011)(same); *Stickle v. SCIWestern Market Support Ctr., L.P.*, No. CV 08-083-PHX-MHM, 2008 WL 4446539, at *18 (D. Ariz. Sept. 30, 2008)(same).

"The futility exception is 'designed to avoid the need to pursue an administrative review that is demonstrably doomed to fail.'" *A.F. v. Providence Health Plan*, 157 F. Supp. 2d 899, 909 (D. Or. 2016)(quoting *Diaz v. United Agr. Emp. Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1485 (9th Cir. 1995)).  "'[B]are assertions of futility'" are not sufficient to invoke the exception, and "'a Plan's refusal to pay does not, by itself, show futility.'"  *Id*. (quoting *Foster v. Blue Shield of Cal.*, No. CV 05-03324 DDP (Ssx), 2009 WL 1586039, at *5 (C.D. Cal. June 3, 2009)).

Here Plaintiff points to the exchanges between his counsel, Clifford Davidson, and defense counsel, David Barlow, after Davidson was appointed.  According to Plaintiff, those exchanges establish reconsideration by the Board of Trustees would be futile.  On February 29, 2016, Davidson emailed Barlow and stated:

> My firm has accepted the court's appointment as Mr. Osires' counsel.  We will be drafting an amended complaint.
>
> Before I do that, and before everyone incurs expense, I would like to propose the following.

16 - OPINION AND ORDER

> Based on my review of the materials you sent (thank you, by the way) and those my client has provided to me, I believe it is highly likely that Judge Brown would remand Mr. Osires' case to your client for a new administrative hearing where Mr. Osires could be present. Rather than go through filing an amended complaint and briefing this issue, would your client agree to hold that re-hearing now? If your client reaches the same conclusion as last time, then we know what we're litigating about.

Decl. of Clifford Davidson, Ex. 1 at 2. Barlow responded that same day: "I will ask the Board. I am sure I will be asked why you believe the court would order a new hearing since he was offered in writing the chance to appear at the May appeals meeting." Davidson Decl., Ex. 1 at 1. Davidson, in turn, advised Barlow:

> Thank you for your willingness to approach the board. Among other things, Mr. Osires should be afforded another hearing because:
>
> (1) Mr. Osires (mis-)understood that his interests were being represented at the hearing, as evidenced by his handwritten notation on the attached form.
> (2) The attached Correspondence Tracking indicates that there was a disruption in the process of generating the continuation coverage/COBRA packet, calling into question both whether the packet was ever sent and whether the hearing panel sufficiently investigated the matter;
> (3) The Correspondence Tracking notes (p. 2 of 2) contain inaccuracies suggesting that they are unreliable (*e.g.*, the date of UPS' supplemental payment);
> (4) Despite my request in our phone call, your client adduced no evidence that the continuation/COBRA packet was actually mailed to my client; and

17 - OPINION AND ORDER

>             (5)  Mr. Osires would explain that he missed
>                  the deadline by only 14 days.
>
> In short, the court would remand for further
> development of the facts in this case - facts
> indicating that there should have been further
> investigation, and that Mr. Osires made himself
> available for the hearing and believed (whether
> erroneously or not) that his interests were being
> represented.  Your client should bear in mind that
> Oregon is a notice prejudice state, wherein your
> client will have to convince a judge that your
> client has suffered prejudice through an
> application that is 14 days late from a man who
> paid into a program for over 30 years.

Davidson Decl., Ex. 1 at 1.  On March 8, 2016, Barlow sent Davidson a letter in which he noted:  "I have reviewed your correspondence with the Trust.  The Trust believes that the appeal was properly handled and decided.  As a result, the Trust is not agreeable to remanding the matter for a new hearing."  Davidson Decl., Ex. 2 at 1.

Plaintiff asserts Barlow's March 8, 2016, letter advising Davidson that the Trust "is not agreeable to remanding the matter for a new hearing" establishes the fact that reconsideration of this matter by the Board of Trustees would be futile.  Defendant, however, notes on April 12, 2016, after Plaintiff filed his First Amended Complaint, Barlow "notified Mr. Davidson that the Board of Trustees, after reviewing the allegations in the First Amended Complaint, was willing to hold a second appeal hearing at the next quarterly appeal meeting on May 3, 2016 given the allegations that Plaintiff would have appeared on May 6, 2015."

18 - OPINION AND ORDER

Decl. of David Barlow at ¶ 27.  According to Barlow, "[o]n April 22, 2016, Mr. Davidson notified my office that the Plaintiff did not see the point in having a second appeal heard and would not participate in the appeal process."  *Id*. at ¶ 28.

   As noted, the Ninth Circuit has made clear that "'a Plan's refusal to pay does not, by itself, show futility.'"  *Diaz*, 50 F.3d at 1485.  In addition, Defendant concedes Plaintiff has raised issues and presented facts that were not before the Claim Appeal Committee when they denied Plaintiff's initial appeal regarding his request for coverage.  Moreover, Davidson believed as recently as February 2016 that the Court could and should remand the matter to the Board for further review based on the facts presented and issues raised by Plaintiff in Davidson's email and alleged in Plaintiff's First Amended Complaint.

   On this record and in the exercise of its discretion, the Court concludes Plaintiff's request for benefits should be heard by the Board of Trustees Claim Appeal Committee to consider the facts, argument, and evidence that Plaintiff relies on in his First Amended Complaint and in his Response to Defendants' Motion for Summary Judgment.  Accordingly, the Court grants Defendants' Motion for Summary Judgment and dismisses this matter without prejudice so that Plaintiff's request for benefits may be heard in its entirety by the Board of Trustees Claim Appeal Committee.

19 - OPINION AND ORDER

## CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion (#37) for Summary Judgment and **DISMISSES** this matter **without prejudice**.

IT IS SO ORDERED.

DATED this 4th day of October, 2016.

/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

20 - OPINION AND ORDER